■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL HALL, Appellant. [861 NYS2d 411]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (McGann, J.), rendered March 21, 2005, convicting him of robbery in the first degree and criminal possession of weapon in the fourth degree, upon a jury verdict, and imposing sentence.

Ordered that the matter is remitted to the Supreme Court, Queens County, to hear and report, in accordance herewith, on the defendant's challenge to the prosecutor's exercise of peremptory challenges against black venirepersons, and the appeal is held in abeyance in the interim. The Supreme Court shall file its report with all convenient speed.

In three rounds of jury selection, the prosecutor exercised peremptory challenges against each of the five black venirepersons who were called and not removed for cause. Defense counsel made an application pursuant to *Batson v Kentucky* (476 US 79 [1986]), alleging that the prosecutor was using her peremptory challenges to remove prospective black jurors because of their race. The Supreme Court found that defense counsel had made a prima facie showing of discrimination, and called upon the prosecutor to state the reasons for her challenges of the black jurors. As to one, the prosecutor stated that she seemed "scattered," loved money, and, when asked if she could put personal feelings aside, answered that she "minded [her] business." Despite the juror's previous service on two civil juries, the prosecutor concluded that she was "completely inappropriate." As to a second black juror, the prosecutor stated that the juror, who was a frequent and involved churchgoer, might feel "sympathy" for the defendant who planned to present alibi evidence that, at the time of the crime, he was in church with his mother. The prosecutor stated that the third challenged black juror "appeared to be sitting back in her chair with crossed arms and a look on her face" and that, "more than once," the prospective juror "was leering at" her. The prosecutor observed that the juror appeared at times not to be listening until the court addressed her by name. The prosecutor stated that the fourth black juror had said only that she "thought" she could be fair and "hem[med] and hawed" before saying she "could be fair." Additionally, the prosecutor said that the juror had "rolled her eyes" when she answered that she was willing to serve, leading

the prosecutor to conclude that the juror "had no interest and didn't want to sit in this case." The prosecutor stated that she did not know much about the fifth challenged black juror and did not "have the opportunity to speak to her that much." The prosecutor noted that the juror had neither been a crime victim nor known someone who was accused of a crime, and seemed close in age to "the defendant's mother who is a witness in this case."

The court found that the prosecutor's stated reasons were race neutral, and denied the defendant's *Batson* application. Defense counsel said nothing in response to the ruling, and voir dire continued. Shortly thereafter, the prosecutor exercised a peremptory challenge against a sixth black juror, and defense counsel renewed his application. The court again called upon the prosecutor to state her reasons, and the prosecutor stated that, like another of the challenged black jurors, this juror was also an active churchgoer. The prosecutor asserted that she had exercised a peremptory challenge against the juror in light of the defendant's proposed alibi defense. The court found the reason to be race neutral and, again, defense counsel said nothing in response to the ruling.

The *Batson* protocol is now familiar (*see People v Luciano,* 10 NY3d 499 [2008]). The moving party must first make a prima facie case, based on the record of the voir dire, that his or her adversary is exercising peremptory challenges to remove prospective jurors on the basis of their membership in a constitutionally cognizable class protected under the Equal Protection Clause of the United States and New York State Constitutions (*see Hernandez v New York,* 500 US 352, 358 [1991]; *People v James,* 99 NY2d 264, 270 [2002]; *People v Allen,* 86 NY2d 101, 104 [1995]). Where the moving party makes such a prima facie showing, the burden shifts to the adversary to offer reasons for the disputed peremptory challenges unrelated to the jurors' membership in the protected class (*see People v James,* 99 NY2d at 270; *People v Allen,* 86 NY2d at 104). If such reasons are offered (*see Hernandez v New York,* 500 US at 359), the burden shifts back to the moving party to convince the court that the reasons, although facially neutral, are pretextual and not the genuine reasons for the strikes (*see Purkett v Elem,* 514 US 765, 768 [1995]; *People v Luciano,* 10 NY3d 499 [2008]; *People v Wells,* 7 NY3d 51, 58 [2006]; *People v Smocum,* 99 NY2d 418, 422 [2003]; *People v James,* 99 NY2d at 271; *People v Allen,* 86 NY2d at 110; *People v Thompson,* 34 AD3d 852 [2006]; *People v Richie,* 217 AD2d 84, 87 [1995]). The court will disallow any peremptory challenge which it finds to have been based on the

prospective juror's membership in the protected class (*see People v Thompson*, 51 AD3d 951 [2008]; *People v McIndoe*, 277 AD2d 252 [2000]; *cf. People v Wilson*, 23 AD3d 682, 682-683 [2005]).

Here, we agree with the trial court that the defendant made a prima facie showing that the prosecutor was using peremptory challenges to remove prospective jurors on account of their race. We also agree with the Supreme Court's findings that the prosecutor offered reasons for the disputed challenges which were facially neutral and unrelated to the challenged jurors' race. The court, however, did not perform the final step in the *Batson* procedure in that it did not invite argument, and made no finding, as to whether the reasons offered by the prosecutor, although facially neutral, were pretextual and not the genuine reasons for the challenges. Accordingly, we hold the appeal in abeyance and remit the matter to the Supreme Court to hear and report on the final step of the *Batson* process. Fisher, J.P., Dillon, McCarthy and Belen, JJ., concur.